UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL CROY,

                Plaintiff,

      - against -

GRAPHICLY, INC.

                Defendant.

COMPLAINT
JURY TRIAL DEMANDED

Civil Docket No.

14cv445 RHK/JJK

Plaintiff Michael Croy, by his attorney Murray Law LLC, as and for his

Complaint against Defendant Graphicly, Inc. ("Graphicly"), alleges as follows:

### Nature of the Action

1.      This is an action for damages based on Graphicly's Breach of Contract and the

Duty of Good Faith, Promissory Estoppel, Unjust Enrichment, and violation of Minnesota

Statutes, arising from its wrongful termination of Michael Croy's employment contract, failure to

pay to Mr. Croy commission payments owing to him, and denial of Mr. Croy's rights to an

equity investment in the company.

### Parties

3.      Plaintiff Michael Croy resides in the City of Minneapolis in the State of

Minnesota.  He was employed by Graphicly as its Vice President of Sales from October 2012 to

September 2013.

4.      Defendant Graphicly is a corporation that, upon information and belief, is

organized and incorporated under the laws of the State of Colorado and has its principal place of

business in Palo Alto, California.  It is a digital publisher, specializing in graphic novels and non-

fiction books.  Initially a digital publishing platform for comic books, it now supports children's

books, art books, and magazines.



Jurisdiction and Venue

5.  Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant reside in different states and because the value of the matter in controversy exceeds $75,000.  Supplemental jurisdiction exists over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.  Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claim is based occurred in the District of Minnesota.

Statement of Facts

7.  In mid-2012, Graphicly was a two year-old struggling Internet start-up company seeking a new direction.  A publisher of graphic digital content, Graphicly had focused its business on the comic-book market, but having exhausted that market's possibilities, the company's progress had stalled, and it was unable to drive the growth needed to sustain the company and investor interest.  Graphicly began a job search to hire an experienced sales executive with a strong track record in traditional publishing and an extensive contact list to diversify its client list of publishers beyond single channel comic and graphic novel publishers.  The candidate that excelled above all others was Michael Croy.

8.  Recruited to join Graphicly as its Vice-President of Sales in October 2012, Michael Croy had had a stellar twenty-year career in two of the largest and most respected publishing houses in the world.  While maintaining Graphicly's lead in digital comic book publishing, Mr. Croy's mission was to build Graphicly a wider customer base, including trade publishers, distributors, and businesses with differing content seeking digital conversion.  This diversification would increase revenue and investor interest, with a view ultimately to securing a successful buyout that would enrich the equity stakeholders.  Mr. Croy would innovate and lead

these new directions to diversity Graphicly's sales position, including choosing the appropriate client relationships to be fostered.

9.     To induce Mr. Croy to leave the executive-level position he held at the time at Simon & Schuster, Inc., Mr. Croy was promised a significant compensation package, consisting of an annual salary of $175,000, commissions based on a sales compensation plan effective December 31, 2012, and an opportunity to participate in a board-approved equity incentive plan. These terms were memorialized in a September 15, 2012 employment contract. While the contract included boilerplate language that Mr. Croy's employment relationship was "at will," the "at will" concept was never discussed orally with Mr. Croy. Rather, he was assured again and again by representatives of Graphicly at the time the contract was executed that his undivided loyalty and hard work for Graphicly would be rewarded both by a substantial salary package and significant equity ownership. On November 28, 2012, Graphicly's Board of Directors voted to grant Mr. Croy 200,000 stock options, which would begin vesting on the anniversary of the commencement of Mr. Croy's employment.

10.     In consideration of these promises, Mr. Croy resigned from his lucrative position at Simon & Schuster, declined other remunerative employment opportunities, and cultivated – without reservation – his extensive contact database to generate for Graphicly an impressive and diverse roster of clients. During his tenure at Graphicly, Mr. Croy transformed the company's sales position. Within a few months, Mr. Croy had diversified Graphicly's list of contracted clients, adding university presses, children's book publishers, educational publishers and non-fiction publishers. Mr. Croy closed the company's most impactful contracts. His signature deals included the signing of Scholastic Books, the worlds largest children's book publisher; contracts with the industry-leading comic book publishers, D.C. Comics and Dark Horse Comics; and the

renegotiation, at significant savings, of Graphicly's contracts with Marvel Comics and Iconix Brands, parent company of the Peanuts licensed products.

11.     This sea-change in the streamlining and direction of Graphicly's business resulted in a double-digit new business bottom-line impact and drove year-over-year net billing, customer growth and continued investor interest.

12.     Plaintiff's pivotal role in Graphicly's expansion and diversification is emphasized in an interview of Graphicly's former C.E.O. Micah Baldwin published in the online journal Tech Crunch on September 4, 2013.  Noting that Graphicly had "started out with a focus on comic books," Baldwin explained that the company had since "expanded outwards to all kinds of visual publications."  *See* Visual Publisher Graphicly Raises $1.3M And Gets A New CEO As Co-Founder Steps Down To Focus On Product, Techcrunch 9/4/2013, available at http://techcrunch.com/2013/09/04/visual-publisher-graphicly-raises-1-3m-and-gets-a-new-ceo-as-co-founder-steps-down-to-focus-on-product/.  Baldwin added that Graphicly was "on pace to double revenue year-over-year (. . . in the millions) and that [it has] doubled the number of publishers that it serves in under 6 months."  *Id.*  Among the 10,000 publishers served by Graphicly, Baldwin highlighted seven in particular, five of which were either companies signed by Mr. Croy, or companies whose contracts Mr. Croy had favorably renegotiated: Scholastic, University of Texas Press, Marvel, Peanuts and Dark Horse.  *Id.*

13.     Throughout his employment at Graphicly, Mr. Croy was based in Minnesota, and apart from two out-of-state business trips, conducted the entirety of his communications on behalf of or with Graphicly, its management team and employees – including communications relating to the negotiation of his employment contract – from his Minneosta office, via e-mail, video-conferencing and telephone.

14.     In July 2013, Graphicly faced a cash shortage. Graphicly's new C.E.O., David Fox, approached Mr. Cory to renegotiate his employment contract. After extensive discussions, it was agreed that Mr. Croy would take an immediate 29% pay-cut. In return, however, and echoing the assurances made to Mr. Croy when his employment contract was originally negotiated, Mr. Fox assured Mr. Croy that he would be made whole both through commission payments and the value of his stock options when the company was sold. Mr. Fox agreed that the relevant percentage for commission payments would be 4%, retroactive to January 1, 2013. To further sweeten this arrangement, and reward Mr. Croy for "taking one for the team" by "extending the cash runway," Mr. Fox promised to get board approval for a grant of 20,000 Graphicly shares to Mr. Croy. During these negotiations, it was made clear to Mr. Croy that he was a valued member of the Graphicly family, that his employment would continue until at least the vestment of the stock options assured him in his original employment contract, and that it was expected that Mr. Croy would participate with other equity holders in what would likely be a lucrative buy-out in the near future. Based on these assurances and promises, Mr. Croy agreed to the pay-cut and to remain at Graphicly.

15.     On September 18, 2013, days shy of the first vestment "cliff" of Mr. Croy's stock options, Mr. Fox advised Mr. Croy that Graphicly was terminating his employment. At no point did Mr. Fox indicate that the termination was for cause, and indeed, nor could he, since Mr. Croy's contribution and commitment to Graphicly was nothing short of exceptional. Mr. Croy received his final paycheck on September 18, 2013.

First Cause of Action
<u>Breach of Contract</u>

16.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 15 above as if fully set forth herein.

17.     In terminating Plaintiff without cause, and in denying Plaintiff commission payments, salary payments, Graphicly shares and equity options, as mutually agreed upon, Defendant has breached its express contractual obligations to Plaintiff, as well as the implied covenant of good faith and fair dealing.

18.     Plaintiff had a reasonable expectation that his employment at Graphicly would continue, that his equity interest in Graphicly would vest and appreciate during the time he was employed by Graphicly, and that he would enjoy the economic benefits of any appreciated value of his shares in the company.

19.     As a consequence of Defendant's breach of contract, Plaintiff has sustained direct damages in an amount to be proven at trial but believed to be in excess of $75,000.00.

Second Cause of Action
Promissory Estoppel

20.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 19 above as if fully set forth herein.

21.     Defendant represented and promised to Plaintiff that it would provide salary, bonuses, commissions on Plaintiff's specific sales, medical benefits and other employment benefits, and that it would permit Plaintiff to build an equity interest in the company.

22.     These representations and promises to Plaintiff were intended to induce Plaintiff's reliance, and Plaintiff did indeed rely on them to his detriment.

23.     Defendant wrongfully failed to honor its commitments and promises to Plaintiff.

24.     Plaintiff has suffered, and will suffer, damages attributable to his reliance on Defendant's representations and promise in an amount to be proven at trial, but believed to be in excess of $75,000.00.

### Third Cause of Action
### Unjust Enrichment

25.    Plaintiff repeats and realleges Paragraph Nos. 1 through 24 as if fully set forth herein.

26.    Defendant promised commissions and equity ownership if Plaintiff used his skill and contacts to generate increased and diversified sales for the company.

27.    Defendant reaped hundreds of thousands of dollars in sales, increased company value, and intensified investor interest as a result of Plaintiff's efforts, yet knowingly failed to provide rightful commission payments to Plaintiff, and knowingly denied Plaintiff his rightful equity participation.

28.    Defendant has been unjustly enriched, and it would be inequitable to permit Defendant to retain such benefits.

29.    Inequity can only be prevented by awarding Plaintiff the sum of the benefits bestowed in an amount to be proven at trial but believed to be in excess of $75,000.00.

### Fourth Cause of Action
### Failure to Make Prompt Payment of Commissions

30.    Plaintiff repeats and realleges Paragraph Nos. 1 through 29 as if fully set forth herein.

31.    Defendant has failed to make payment of all commissions due Plaintiff with respect to his sales on behalf of Defendant, in violation of Minnesota Statutes Section 181.13.

32.    In October 2013, Plaintiff demanded payment of commissions owed to him by Defendant.

33.    Defendant refused payment of the commissions.

34.    As a direct result, Defendant owes Plaintiff, earned commissions, statutory penalties and attorney's fees in an amount to be proven at trial.

Fifth Cause of Action
False Statements to Induce Change of Employment

35.    Plaintiff repeats and realleges Paragraph Nos. 1 through 34 as if fully set forth herein.

36.    Defendant made false or deceptive representations to Plaintiff to induce him to accept employment at Graphicly and to remain at Graphicly.  Based on these representations, Plaintiff accepted employment at Graphicly and remained at Graphicly.

37.    Defendant's  false and deceptive representations violated Minnesota Statutes Section 181.65.

38.    As a direct result, Defendant owes Plaintiff damages in the form of lost salary, earned commissions, equity interest, and attorney's fees in an amount to be proven at trial.

**WHEREFORE,** Plaintiff seeks relief from this Court and asks this Court for judgment in favor of Plaintiff against Defendant as follows:

1.    Awarding Plaintiff damages against Defendant in excess of $75,000;

2.    Awarding Plaintiff his costs, disbursements, prejudgment interest and reasonable attorney's fees;

3.    Awarding Plaintiff the penalty for non-prompt payment of commissions pursuant to Minnesota Statutes Section 181.13; and

4.      Granting Plaintiff such other, further or different relief as the Court may deem just

or equitable.

Dated: Minneapolis, Minnesota
February 18, 2014

JaneAnne Murray
Attorney ID: 0394887
Attorney for Plaintiff Michael Croy
MURRAY LAW LLC
220 South Sixth Street, Suite 1200
Minneapolis, MN New York 55402
(612)-339-5160 (t)
(866) 259-7819 (f)
jm@mlawllc.com